IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Johnette Adams, ) | |
| ) | |
| Plaintiff, ) | C/A NO. 3:05-1546-CMC |
| ) | |
| v. ) | |
| ) | **ORDER** |
| Broadspire Administrative Services, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

### INTRODUCTION

This matter is before the court on Plaintiff's motion for attorney's fees filed in advance of resolution of the merits. Plaintiff suggests that she is entitled to an award of attorney's fees because Defendant began paying short-term disability ("STD") benefits to Plaintiff at some point after counsel became involved in assisting Plaintiff in pursuing benefits, but prior to or shortly after this litigation was initiated. Plaintiff also asserts that she is entitled to an award of attorney's fees because Defendant failed to make the disability payments jointly to Plaintiff and her attorney. Finally, Plaintiff suggests that the court should consider her thirty-three percent contingency fee agreement with her attorney in deciding the amount of any benefit to award.

### BACKGROUND

Plaintiff filed her claim for STD benefits in late July 2004.[1] The claim was denied within a month, prompting Plaintiff, acting on her own behalf, to file an appeal on August 18, 2004. That appeal was, according to Plaintiff, denied on or about December 13, 2004.

---

[1] Plaintiff asserts that she filed her claim for short-term disability benefits sometime after leaving work on July 21, 2004. According to Defendant, the application was made on or about July 26, 2004.

The day after receiving the denial letter, Plaintiff met with her present counsel. Dkt No. 11-3 p. 4 (counsel's billing record). Two weeks later, Plaintiff's counsel wrote to Defendant advising of his representation and requesting a copy of Plaintiff's file. *Id.* According to Plaintiff, Defendant refused to provide the record until it received a written request from Plaintiff. Dkt No. 11-2 at 3. This request was provided shortly thereafter. *Id.*

Between January 10, 2005 and May 26, 2005, Plaintiff's counsel took various actions in support of Plaintiff's appeal, communicating repeatedly with Defendant. *Id.* He filed the present action on May 31, 2005.[2] No later than July 2, 2005, Plaintiff received Defendant's decision on the second level appeal. Dkt No. 11-3 at 6 (billing entry). The decision letter stated that "benefits have been reinstated effective January 11, 2005." Dkt No. 11-2 at 4 (quotation of letter stating).

According to Plaintiff, she actually began receiving the reinstated STD benefits sometime in January 2005. Affidavit of Johnette Adams ¶ 2 (Dkt No. 11-3 p. 1). She did not, however, inform her attorney of her receipt of benefits. Dkt No. 11-2 at 11.[3]

The present action was filed on May 31, 2005 seeking payment of both STD and Long-Term Disability ("LTD") benefits. At the time the action was filed, Plaintiff's counsel understood or

---

[2] Plaintiff's memorandum and billing records suggest the complaint was prepared and filed on June 3, 2005. Dkt No. 11-2 at 3 (memorandum); Dkt No 11-3 at 6 (billing records). The court's docket, however, reveals that the complaint was filed on May 31, 2005. Dkt No. 1.

[3] Defendant concedes that it denied benefits for the period July 28, 2004 through January 10, 2005. It is also undisputed that Defendant has, since that time, made the decision to pay benefits effective January 11, 2005. Precisely when this decision was made and communicated to Plaintiff is, however, unclear. While Plaintiff suggests she began receiving benefits in January, Defendant's decision letter suggests the payments were made after July 2005, but paid retroactively to January 2005. For present purposes, however, the court has accepted the statements in Plaintiff's affidavit as true.

2

assumed that STD benefits were not being paid although Plaintiff now asserts that she had been receiving benefits since January.

No evidence has been presented to suggest that Plaintiff had applied for or would have been entitled to LTD benefits at the time this action was filed. What evidence is before the court suggests that LTD benefits could only be pursued after STD benefits had been paid for one year. Indeed, it appears that Plaintiff's application for LTD benefits was filed in late 2005 and that such benefits have been paid since January 2006.

Plaintiff's counsel asserts that, in January 2006 (after this action was filed), he requested that he be named as a co-payee on Plaintiff's LTD checks. Dkt No. 11-2 at 5. He further asserts that this request was denied.

## DISCUSSION

**1.      The present record does not support an award of fees.**

In actions pursued under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." *See* 29 U.S.C. § 1132(g)(1). This phrasing does not suggest a strict requirement for "prevailing party" status. Nonetheless, the relevant factors include consideration of "[t]he relative merits of the parties' positions." *Reinking v. Philadelphia American Life Ins. Co.,* 910 F.2d 1210, 1217-18 (4th Cir. 1990).

On the present record, the court cannot find that the filing of this action was necessary to protect Plaintiff's rights under her STD or LTD Plans. Indeed, if Plaintiff's affidavit is correct in stating that she began receiving benefits in January 2005, the opposite inference would follow as to the STD Plan.

Even assuming that Defendant made the decision to pay STD benefits in July 2005, and then made payments retroactive to January (the scenario suggested by Defendant's memorandum), the record would be insufficient for the court to conclude that the present action was necessary to protect Plaintiff's rights to STD benefits. This is because no evidence has been provided which would suggest that Defendant's July 2005 decision to award benefits was made only because of the filing of this action, as opposed to coming at the conclusion of the Plan's normal appeals process.[4] Thus, the court has no basis on which to evaluate the relative merits of the parties' positions as to the STD claim, and even less, at present, on which to evaluate the LTD claim.[5]

Other factors to be considered include but are not limited to the "[d]egree of the opposing parties' culpability or bad faith." *Reinking*, 910 F.2d at 1217-18. To the extent Plaintiff argues that Defendant acted improperly in refusing to make checks payable jointly to Plaintiff *and* her attorney, it would, at most, implicate this factor.[6] Plaintiff has not, however, directed the court to any authority which would either require or allow Defendant to make payments in this manner. The Plan documents, by contrast, preclude such alienation of benefits. STD Plan Section 7.2 ("Assignment or alienation of any benefits under the Plan will not be permitted or recognized.") In any case,

---

[4] The court assumes arguendo that such a catalyst effect might be considered in deciding whether to award attorney's fees under the unique language of 29 U.S.C. § 1132(g)(1).

[5] The judicial requirement that beneficiaries exhaust plan remedies before filing suit may bar consideration of the LTD claim where no application had been made therefore at the time the action was filed.

[6] From Plaintiff's recitation of events, it appears the request for inclusion of counsel's name on the checks was made by her attorney in January 2006. Thus, the request presumably related to the LTD benefit payments. As noted in the text, no showing has yet been made that the claim for LTD benefits was even ripe at the time this action was filed, much less that the action was necessary to obtain the LTD benefits. There is also no evidence presented which would suggest that Plaintiff joined in her counsel's request that checks be paid jointly.

Plaintiff has not shown how she could have been prejudiced by such a decision. As she acknowledges in her memorandum, it is Plaintiff, not her counsel, who has the right to seek recovery of fees. Dkt No. 11-2 at 9.

For the reasons set forth above, the court finds that the present record is inadequate to support Plaintiff's motion for attorney's fees. The record is not, however, so clear as to preclude refiling after resolution of the merits.

**2.     Considerations in the event of refiling.**

To the extent Plaintiff elects to file a subsequent motion for attorney's fees, she should address, in particular, the extent to which the present action was necessary to and resulted in the protection of her rights under the relevant ERISA benefit plan or plans. This, necessarily, requires that she address the extent to which she exhausted Plan remedies prior to initiating litigation as to the relevant Plan benefits (*i.e.* the STD versus the LTD claims) and the extent to which this action resulted in her receipt of benefits.

If Plaintiff elects to further rely on Defendant's refusal to make checks payable jointly to Plaintiff and her counsel as a basis for a fee award, she must provide legal authority in support of the proposition that such alienation is allowable under ERISA and the relevant Plan documents. She should also provide authority in support of the proposition that such a refusal constitutes bad faith or otherwise supports an entitlement to fees.

Finally, if Plaintiff elects to seek an award based on a contingency formulation, she should provide ERISA-specific authority in support of this proposition. In this regard, the court notes that the authority cited by Plaintiff in her present memorandum does not support use of a contingency

formula to assess fees under a fee shifting statute.[7]

## CONCLUSION

For the reasons set forth above, the court denies Plaintiff's motion for attorney's fees based on the present record. This decision is without prejudice to a renewed motion for attorney's fees after resolution of any remaining merits issues. Any renewed motion shall address concerns raised in this order.

IT IS SO ORDERED.

                s/ Cameron McGowan Currie
                CAMERON MCGOWAN CURRIE
                UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
April 25, 2006

C:\temp\notesB0AA3C\05-1546  adams v broadspire atty fee denial.wpd

---

[7] Plaintiff relies on *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002) in suggesting that the court should consider her 33% contingency fee agreement with her attorney rather than a lodestar formulation in deciding the amount of any fee award to be assessed against Defendant. The *Gisbrecht* decision, which addresses statutory limits on contingency fees assessed against the represented party (specifically Social Security claimants), is of no relevance to an ERISA beneficiary's pursuit of fees from her Plan or related entities, here the third-party administrator.